UNITED STATES of America

v.

Bernard Wyle COLEMAN, Defendant.

Crim. No. 89–0483–LFO.

United States District Court, District of Columbia.

May 2, 1991.

Craig Iscoe, Asst. U.S. Atty., Washington, D.C., for U.S.

Diane Lepley, Washington, D.C., for defendant.

MEMORANDUM

OBERDORFER, District Judge.

This matter is before the Court for sentencing of defendant. Having been author-

itatively diagnosed as mentally ill, but competent to stand trial, he has pled guilty to a one count information charging him with bank robbery in violation of 18 U.S.C. § 2113(b). The robbery occurred on August 18, 1989, at the Citicorp Savings Bank, 1001 Pennsylvania Avenue, N.W., Washington, D.C. There are indications that the defendant had a vague, but erroneous, notion that he had an account at the bank. In any event, the defendant approached a teller and handed her a note. The teller could not read the note and she handed it back to the defendant with a blank sheet of paper. She still could not read a second note. So the defendant said: "I want $5,000 and give me only 20s." The teller gave him $1,000 in U.S. currency, whereupon he left the bank and disappeared.

Authorities were unable to locate him until December 18, 1989. On that date, while living in New York City, defendant telephoned agents of the Secret Service and told them where he was, gave them his telephone number, and advised them that he had robbed a bank in Washington. On interview, he immediately confessed, was arrested, and removed to this district where he was. charged and arraigned.

While defendant was in New York, he had lived with his sister. Shortly before he turned himself in he had caused a violent disturbance which resulted in his arrest for violation of a protective order. Defendant's mother has also expressed fear of him because of a violent incident in 1988.

In light of these and other indications of mental illness, after arraignment defendant was referred to the Bureau of Prisons facility at Butner, North Carolina, for determination of his competency to stand trial. Doctors there originally diagnosed him as paranoid and schizophrenic, and found that he was not competent to stand trial. They began a course of medication and other therapy. On November 13, 1990, the same doctors determined defendant to have become competent to stand trial because he had responded well to the medication, no longer posed any risk to himself or others, remained compliant with medication, and appeared to understand the benefit of med-

ication. The doctors recommended, nevertheless, that defendant be closely monitored for medication compliance throughout the resolution of his legal situation.

Since pleading guilty defendant has appeared on several occasions at presentence hearings. Observations of defendant's behavior in court at these hearings and counsel's representations of her impressions of him provide lay confirmation of the medical opinion that, although defendant is mentally ill, he was competent to stand trial at the time of his plea and thereafter to participate intelligently in the sentencing process. It is undisputed that in a supervised environment he has accepted medication and it has regularized his behavior. It is also apparent from his history, however, that without medication he could quickly revert to the irresponsible state in which he engaged in criminal conduct and became a danger to his family and to the community.

The Probation Officer's presentence report observes that under the relevant statute he could be sentenced to confinement and to probation for not less than one nor more than five years. Under the Sentencing Guidelines confinement is a matter within the Court's discretion, but a term of probation of from one to three years is mandated. The Probation Officer recommends no confinement and two years of probation.

I conclude that: (1) While the defendant's conduct was obviously criminal and he was legally responsible for it, his ability to appreciate the nature and quality or the wrongfulness of his act was diminished at the time of the offense. (2) So long as he takes the medication at the times and in the dosage prescribed, he is not likely to engage in further criminal conduct or to threaten violence to his family or the community. (3) Incarceration is not indicated provided that defendant's family and the community can be reasonably assured that he will continue to take the medication.

Accordingly, an order to be issued on May 7, 1991, will place defendant on probation for five years with directions to the Probation Officer and to the defendant that he be placed under such inpatient or outpa-

tient supervision as the Probation Officer shall determine is necessary to assure that defendant receives the medication and such other treatment as may be indicated for his mental illness.

Imposing the full statutory five year probation term is an upward departure from the three year guideline limit on probation, I conclude, however, that the departure is justified by concern for the safety of defendant's family and the community if his medication and treatment were not supervised by the Probation Officer for as long as possible. I find no evidence that, in determining the one to three year range for the term of probation in cases involving this kind of robbery, the Sentencing Commission considered the case of a person with diminished capacity who required, not incarceration, but supervised medication to assure the safety of the community and good behavior for as long as possible. Accordingly, orders to be entered will:

1. Place defendant on probation under the supervision of the Probation Officer of this District for a period of five years on special conditions enumerated in the order.

2. Require the medical staff of the Department of Corrections, on or before May 7, 1991, to provide the Probation Officer with a month's supply of defendant's daily medication, including haldol and cogentin.

3. Require the United States Marshal Service and the Department of Corrections to transport or cause defendant to be transported (together with all his records and the medication being provided to the Probation Officer by the Department of Corrections) to Courtroom No. 3 in time for sentencing at 9:00 a.m. on May 7, 1991, and for delivery of the supply of medication to the Probation Officer.

4. Require the Probation Officer to meet defendant at this courthouse at the moment he is released from confinement on May 7, 1991, and transport him from this courthouse to the place designated by the Probation Office for his inpatient treatment.